UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

ANTHONY HERBERT,

Defendant.

Case No. 26 Cr. 4 (VEC)

Oral Argument Requested

**MOTION TO DISMISS COUNT FIVE OF THE INDICTMENT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................ 1
BACKGROUND ........................................ 2
LEGAL STANDARD ........................................ 4
ARGUMENT ........................................ 5
I. Count Five is Duplicitous Because the Two Alleged Frauds Involve Different Proof ...... 5
II. Mr. Herbert Will Be Prejudiced by Count Five's Duplicity ........................................ 7
CONCLUSION ........................................ 11

# TABLE OF AUTHORITIES
## Cases

*Kelly v. United States*,
590 U.S. 391 (2020)....6

*Kousisis v. United States*,
605 U.S. 114 (2025)....5

*Neder v. United States*,
527 U.S. 1 (1999)....6

*Ramos v. Louisiana*,
590 U.S. 83 (2020)....7

*Richardson v. United States*,
526 U.S. 813 (1999)....7

*United States v. Bowline*,
593 F.2d 944 (10th Cir. 1979)....10

*United States v. Clark*,
765 F.2d 297 (2d Cir. 1985)....6

*United States v. Gabriel*,
920 F. Supp. 498 (S.D.N.Y. 1996)....7

*United States v. Hinton*,
127 F. Supp. 2d 548 (D.N.J. 2000)....7, 8, 9, 10

*United States v. Kearney*,
444 F. Supp. 1290 (S.D.N.Y. 1978)....4, 5, 10

*United States v. Margiotta*,
646 F.2d 729 (2d Cir. 1981)....5, 7, 9

*United States v. Munoz-Franco*,
986 F. Supp. 70 (D.P.R. 1997)....8, 10

*United States v. Sampson*,
898 F.3d 270 (2d Cir. 2018)....6

*United States v. Sarshar*,
No. 21-cr-00202 (GHW), ECF No. 70 (S.D.N.Y. Nov. 5, 2021)....7, 8

*United States v. Sturdivant*,
244 F.3d 71 (2d Cir. 2001).... *passim*

*United States v. Weaver*,
860 F.3d 90 (2d Cir. 2017)....6

## Statutes

18 U.S.C. § 666(a)(1)(A) .......... 1, 4, 5

18 U.S.C. § 666(b) .......... 5

## Rules

Fed. R. Crim. P. 8 .......... 1, 4, 10

## Constitutional Provisions

Sixth Amendment .......... 2, 7

## PRELIMINARY STATEMENT

Count Five of the Indictment charges Mr. Herbert with a single violation of 18 U.S.C. § 666(a)(1)(A), but the Indictment describes two separate offenses. The first is premised on an alleged affirmative misrepresentation: that Mr. Herbert told a City official he had "no knowledge of a gofundme" raised for Victim-1's family, and thereby induced the City to pay $16,500 toward Victim-1's funeral. The second is premised on an alleged omission: that Mr. Herbert forwarded a $7,845 invoice for Victim-2's funeral without disclosing that he had referred Victim-2's family to the funeral home. Two different acts, two different statements, two different payments, all made months apart. Rule 8(a) requires "a separate count for each offense." But here the government has charged two offenses as one, and the resulting count cannot be tried without jeopardizing Mr. Herbert's right to a unanimous verdict and, in the unlikely event he is convicted, a sentence tied to what the jury actually found.

The consequence of fusing these two distinct charges is not merely academic. Indeed, by collapsing these offenses into one, the Government may hope to secure a conviction for an offense it could not pursue in isolation. While the Victim-1 theory alleges a false answer to a direct question, the Victim-2 theory is premised on an alleged omission. But nowhere does the Indictment allege that the burial assistance program barred City employees from referring grieving family members to funeral homes. It does not allege that anyone ever asked Mr. Herbert who made the referral. And it does not allege that the $7,845 invoice for Victim-2 was inflated or that the funeral home was paid a dollar more than it was entitled to. At its core, the allegations relating to Victim-2 are simply that Mr. Herbert helped a family bury a victim of gun violence and did not volunteer how the family found the funeral home. Charged on its own, that theory would have to answer why a silent referral was "capable of influencing" officials who never inquired about

referrals. But charged alongside the GoFundMe allegations relating to Victim-1, the Government never has to answer that question.

The resulting prejudice to Mr. Herbert's Sixth Amendment right to a unanimous jury is obvious. Half of the jury could vote to convict Mr. Herbert because they believe he defrauded the City by affirmatively lying about a GoFundMe, and the other half of the jury could vote to convict Mr. Herbert because they believe he defrauded the City by failing to disclose that he made referrals. On a general verdict form, it would be impossible to tell that the jury did not unanimously agree that Mr. Herbert committed either of the alleged frauds. And were Mr. Herbert convicted, that ambiguity would carry over to sentencing. The Court would have no reliable basis for determining which conduct the jury unanimously found (if any), and might sentence Mr. Herbert as if the jury found him guilty of both alleged frauds, even if the jury in fact had not unanimously agreed that he committed either.

Accordingly, the Court should dismiss Count Five or require the Government to elect a single alleged fraud to pursue at trial.

## BACKGROUND

According to the Indictment ("Ind."), Mr. Herbert worked in the Office of the New York City Mayor's Community Affairs Unit from February 2022 until September 2025. Ind. ¶ 6. For the first part of that period, from February 2022 until February 2023, Mr. Herbert served as the Brooklyn Borough Director of Community Affairs. *Id.*

During that time, the Government alleges that Mr. Herbert encouraged City officials to approve approximately $24,000 in burial-assistance reimbursements to a Brooklyn funeral home for the funerals of two victims of gun violence (referred to in the Indictment as "Victim-1" and

"Victim-2"). Ind. ¶¶ 35–44. These reimbursements were made under a burial-assistance program administered by the New York City Human Resources Administration. Ind. ¶ 35.

The Government alleges that in September 2022, a Funeral Home Director emailed Mr. Herbert seeking reimbursement from the City for Victim-1's $19,500 funeral. Ind. ¶ 36. As part of his responsibilities as Brooklyn Borough Director, Mr. Herbert then emailed that invoice to a City Community Affairs official ("Senior Official-4") with a request to "[p]lease process payment request to support funeral expenses for" Victim-1. *Id.* ¶¶ 36–37. Mr. Herbert allegedly sent a follow-up email to Senior Official-4 stating that he was requesting "just $13k" for Victim-1's funeral, and Senior Official-4 allegedly responded that they would "direct HRA to process [the invoice] for 13k." *Id.* ¶ 37.

Months later, in December 2022,[1] Senior Official-4 allegedly asked Mr. Herbert whether Victim-1's family had received any offsetting funds through a GoFundMe account to help cover the funeral. *Id.* ¶ 42. According to the Indictment, Mr. Herbert told Senior Official-4 that he had "no knowledge of a gofundme" even though he was allegedly aware that the victim's family did indeed have a GoFundMe account. *Id.* The Government alleges that as a result of Mr. Herbert's communications with Senior Official-4, "senior Community Affairs officials approved" and sent the Funeral Home Director a $16,500 check to pay for Victim-1's funeral. *Id.* ¶¶ 42–43.

According to the Indictment, in October 2022, Mr. Herbert provided the same Funeral Home Director with contact information for the family of a second victim of gun violence in need of help burying their loved one. Ind. ¶ 38. Following Victim-2's funeral, the Funeral Home Director allegedly emailed Mr. Herbert an invoice with a balance due of $7,845, and Mr. Herbert allegedly sent that invoice "to certain [City] Community Affairs officials" without disclosing that

[1] As written, the Indictment alleges Senior Official-4 asked this question in "December 2023," but the years listed for surrounding events indicate this to be a typographical error.

he had connected the victim's family with the Funeral Home Director. *Id.* ¶ 39. City Community Affairs officials approved the invoice for Victim-2 on or about December 16, 2022. *Id.* ¶ 42. There is no allegation that the amount of money reimbursed to the Funeral Home Director was inflated or otherwise improper. Nor is there any allegation that the burial assistance program barred City employees from referring grieving family members to funeral homes, or that anyone ever asked Mr. Herbert who made the referral.

On January 7, 2026, the Government unsealed a six-count Indictment against Mr. Herbert. Count Five of the Indictment alleges that Mr. Herbert "obtained by fraud property worth at least $5,000" by "fraudulently induc[ing] the City to award funds to the Funeral Home" in violation of 18 U.S.C. § 666(a)(1)(A). Ind. ¶ 63. The Indictment alleges two—and only two—fraudulent acts in connection with the Alleged Victim-1 Fraud and Alleged Victim-2 Fraud: "falsely telling City officials there were no GoFundMe funds raised for Victim-1's funeral, when in fact [he] was aware that thousands of dollars had been raised through GoFundMe, and [] concealing his referrals of Victim-1 and Victim-2 to the Funeral Home Director." *Id.*

## LEGAL STANDARD

"An indictment is impermissibly duplicitous where: (1) it combines two or more distinct crimes into one count in contravention of Fed. R. Crim. P. 8(a)'s requirement that there be 'a separate count for each offense,' and (2) the defendant is prejudiced thereby." *United States v. Sturdivant*, 244 F.3d 71, 75 (2d Cir. 2001). The test for whether a count combines multiple crimes is "whether identical evidence will support" each alleged crime therein. *United States v. Kearney*, 444 F. Supp. 1290, 1294 (S.D.N.Y. 1978) (internal quotations omitted). "[I]f any dissimilar facts must be proved, there is more than one offense." *Id.* (a single count of aiding and abetting the obstruction of correspondence based on multiple incidents of the defendant intercepting mail was

duplicitous because "the evidence which will support an illegal taking of mail addressed to persons at one of the listed addresses … will differ from that to persons at another of the addresses"). Courts assessing prejudice from a duplicitous count consider several factors, including: (1) the risk that the jurors were not "unanimous as to any one of the crimes charged"; (2) the "uncertainty of whether a general verdict conceals a finding of guilty as to one crime and a finding of not guilty as to another"; and (3) the need to "provid[e] the basis for appropriate sentencing." *Sturdivant*, 244 F.3d at 75 (quoting *United States v. Margiotta*, 646 F.2d 729, 733 (2d Cir. 1981)).

## ARGUMENT

### I. Count Five is Duplicitous Because the Two Alleged Frauds Involve Different Proof

Count Five is impermissibly duplicitous because the government must prove different facts to establish the purported frauds involving Victim-1 and Victim-2. In other words, "[i]dentical evidence will [not] support" a finding that Mr. Herbert obtained property by "fraud" as it relates to Victim-1 and Victim-2, because one of the alleged schemes involves an affirmative misstatement, while the other entails an alleged omission. *See Kearney*, 444 F. Supp. at 1294. The proof relating to these two distinct alleged schemes is not the same.

To convict Mr. Herbert under 18 U.S.C. § 666(a)(1)(A), the Government must prove beyond a reasonable doubt: (1) that Mr. Herbert was "an agent of … a State, local, or Indian tribal government, or any agency thereof"; (2) that agency "receive[d], in any one year period, benefits in excess of $10,000 under a Federal program"; and (3) that he "obtain[ed] by fraud," (4) property that "is valued at $5,000 or more, and is owned by, or is under the care, custody, or control of such organization, government, or agency." 18 U.S.C. § 666(a)(1)(A), (b). Moreover, "Materiality of falsehood is an element of … the federal fraud statutes." *See Kousisis v. United States*, 605 U.S. 114, 132 (2025). And a false statement or omission is only material "if it has a natural tendency

to influence, or is capable of influencing, the decision of the decisionmaking body to which it was addressed." *Neder v. United States*, 527 U.S. 1, 16 (1999) (cleaned up); *see also United States v. Weaver*, 860 F.3d 90, 94 (2d Cir. 2017) ("misinformation or omission" is material if it "would naturally tend to lead or is capable of leading a reasonable [person] to change [his] conduct").[2]

As it relates to Victim-1, the Indictment alleges that Mr. Herbert fraudulently induced the City to reimburse the Funeral Home Director $16,500 for the funeral expenses for Victim-1's funeral by "falsely telling City officials there were no GoFundMe funds raised for Victim-1's funeral" despite the fact that Mr. Herbert knew such funds had been raised. Ind. ¶¶ 42–43, 63.[3] But proof of that allegation has nothing to do with the alleged scheme involving Victim-2. The purported fraud relating to Victim-2 involves Mr. Herbert's "conceal[ment]" of his "referral of …Victim-2 to the Funeral Home Director." *Id.* ¶ 63. To prove that alleged fraud, the Government will have to introduce evidence that Mr. Herbert had an obligation to disclose the source of the referral to the Funeral Home Director, and that his failure to do so was material to the Community Affairs officials' decision to approve the $7,845 invoice for Victim-2's funeral—facts that are irrelevant to the alleged fraud involving Victim-1.

Different proofs. Different statements. Different payments. Different crimes. Count Five is undoubtedly and impermissibly duplicitous. *See Sturdivant*, 244 F.3d at 78–79 (single narcotics

---

[2] Although *Kousisis*, *Neder*, and *Weaver* concern the federal wire fraud and mail fraud statutes, courts analyze the fraud element of 18 U.S.C. § 666(a)(1)(A) using the language of and cases interpreting other federal fraud statutes, including the wire fraud and mail fraud statutes. *See Kelly v. United States*, 590 U.S. 391, 398 (2020) (noting that the fraud element of § 666(a)(1)(A) is "[s]imilar[]" to the federal wire fraud statute); *see also United States v. Sampson*, 898 F.3d 270, 277 (2d Cir. 2018) (defining "embezzlement" under § 666(a)(1)(A) based on *United States v. Clark*, 765 F.2d 297 (2d Cir. 1985), a case arising under a different federal embezzlement statute).

[3] In ¶ 63 of the Indictment, the Government for the first time charges Mr. Herbert with "concealing his referral[] of Victim-1…to the Funeral Home Director." But the factual allegations contained in the Indictment do not otherwise describe any referral of Victim-1 or Victim-1's family to the Funeral Home Director. The only referral the Indictment describes is Mr. Herbert's referral of Victim-2's family, the day after Victim-2's death. Ind. ¶ 38. Count Five thus charges Mr. Herbert with concealing a referral that the Indictment never alleges occurred.

distribution charge based on two drug sales to the same police informant a few hours apart was duplicitous); *United States v. Hinton*, 127 F. Supp. 2d 548, 554–56 (D.N.J. 2000) (a single count encompassing distinct frauds against multiple financial institutions was duplicitous); *United States v. Gabriel*, 920 F. Supp. 498, 503 (S.D.N.Y. 1996), aff'd, 125 F.3d 89 (2d Cir. 1997) (single count containing two related fraudulent conspiracies that were "different in impetus, duration, personnel and purpose" was duplicitous).

## II. Mr. Herbert Will Be Prejudiced by Count Five's Duplicity

Count Five's duplicity prejudices Mr. Herbert. Courts assessing prejudice from a duplicitous count consider several factors, including: (1) the risk that the jurors were not "unanimous as to any one of the crimes charged"; (2) the uncertainty of whether a general verdict "conceals a finding of guilty as to one crime and a finding of not guilty as to another"; and (3) the need to "provid[e] the basis for appropriate sentencing." *Sturdivant*, 244 F.3d at 75 (quoting *Margiotta*, 646 F.2d at 733). All three risks are present here.

*First*, Mr. Herbert could be convicted on Count Five without a jury unanimously finding that he committed either the Alleged Victim-1 Fraud or the Alleged Victim-2 Fraud. The Sixth Amendment does not tolerate that result. *See Richardson v. United States*, 526 U.S. 813, 817–19, 824 (1999) (jury must agree unanimously on which specific violations the defendant committed, and reversing where the instruction permitted otherwise); *Ramos v. Louisiana*, 590 U.S. 83, 92 (2020) (Sixth Amendment requires a unanimous verdict to convict).

*United States v. Sarshar* is directly on point. In *Sarshar*, the court rejected a single securities-fraud count that alleged the defendant passed material non-public information to different associates on separate occasions. *United States v. Sarshar*, No. 21-cr-00202 (GHW), ECF No. 70 (S.D.N.Y. Nov. 5, 2021) (Transcript) ("*Sarshar* Tr.") at 127–29. The court observed

that the indictment would allow the defendant to be convicted if "the jury was split and half believed [the defendant] passed [material non-public information ("MNPI")] to associate 1 and the other half believed [he] had passed MNPI to associate 2." *Id.* at 128–29. But a conviction requires "the jury … to *unanimously* decide that [the defendant] passed MNPI to at least one specific person." *Id.* at 128 (emphasis added). The court found that convicting the defendant "without the government having proved, beyond a reasonable doubt, that [the defendant] provided MNPI to any one particular individual" created "a significant risk of prejudice to [the defendant]" requiring dismissal of the indictment or a similar remedy. *Id.*; *see also Hinton*, 127 F. Supp. 2d at 555 ("proceed[ing] on a duplicitous indictment would … prevent the Court from ensuring that any jury verdict against [the defendant] was unanimous with respect to the charged offense"); *United States v. Munoz-Franco*, 986 F. Supp. 70, 71 (D.P.R. 1997) ("[T]he presence of multiple offenses in the same count may give rise to a situation in which a defendant may be convicted without unanimous juror agreement as to any of the offenses charged[.]").

That same risk is present here. As currently pled, Mr. Herbert could be convicted on Count Five even if "the jury was split and half believed" that he defrauded the City in connection with the Alleged Victim-1 Fraud "and the other half believed" that he defrauded the City in connection with the Alleged Victim-2 Fraud. *Sarshar* Tr. at 128–29.

*Second*, and relatedly, if Mr. Herbert were found guilty (though the evidence will show he is not), the guilty verdict would prejudicially conceal which fraud the jury found Mr. Herbert guilty of (if any). In *Sturdivant*, the Second Circuit found a defendant facing one distribution charge combining two alleged drug sales "demonstrated prejudice" because a guilty verdict on that count could "conceal[] a finding of guilty as to one crime and a finding of not guilty as to another." 244 F.3d at 78; *see also Munoz-Franco*, 986 F. Supp. at 71 (duplicitous counts can "produce confusion

as to the basis of the verdict"); *Hinton*, 127 F. Supp. 2d at 555 ("Allowing this case to proceed on a duplicitous indictment would compromise defendant's right to know the charges pending against him[.]"). The same is true in this case. If Mr. Herbert were convicted on Count Five, it would not be clear whether the jury convicted him for the Alleged Victim-1 Fraud, the Alleged Victim-2 Fraud, or both (or neither). Mr. Herbert could unfairly be "treated as if he had been convicted of both crimes charged in the duplicitous indictment" even if the jury's verdict was based on only one of the two alleged crimes. *See Sturdivant*, 244 F.3d at 78.

*Third*, a conviction on Count Five could prejudice Mr. Herbert at sentencing. A duplicitous count undermines the court's ability to provide "the basis for appropriate sentencing." *Sturdivant,* 244 F.3d at 75 (quoting *Margiotta*, 646 F.2d at 733). Were the jury to convict Mr. Herbert on a deficiently pleaded Count Five, the Court would have no basis for determining whether the jury found him guilty of the Victim-1 or Victim-2 allegations, or both (or neither), and could end up sentencing Mr. Herbert based on a loss calculation that did not accurately reflect the conduct of which the jury adjudged him guilty.[4] Here, too, *Sturdivant* is illustrative. There, the single drug distribution count was based on one sale of 3.4 grams of crack cocaine and a second sale of 2.8 grams of crack cocaine. *Sturdivant*, 244 F.3d at 78. The court treated the jury's finding of guilt on that charge "as if [the defendant] had been convicted of both crimes" and thus sentenced the defendant based on a statutory sentencing range for offenses involving five or more grams of crack cocaine. *Id.* Even though the court could not know if the jury found that all the elements of the distribution charge had been met for both drug transactions, it sentenced the defendant as though the jury had made that finding. *Id*. The Second Circuit held that sentencing on that assumption

[4] Depending on a variety of factors, a conviction on both the Alleged Victim-1 Fraud and the Alleged Victim-2 Fraud could increase Mr. Herbert's guideline range by two levels. *See* U.S. SENT'G GUIDELINES MANUAL § 2B1.1 (U.S. SENT'G COMM'N 2025).

was plain error and vacated the sentence, remanding for the court to give the defendant "the benefit of the verdict's ambiguity" and sentence him as if the jury had convicted him only of the transaction involving the lesser drug quantity, and thus the lesser penalty. *Id*. at 80.

That a court can blunt this harm at sentencing does not excuse the defect. And there is no reason to build that error into the case now, before a single juror is impaneled. Rule 8(a) requires "a separate count for each offense." The remedy for a duplicitous count is clear. The Court should either dismiss the count or require the Government to elect the single offense they will pursue at trial. *Sturdivant*, 244 F.3d at 75; *Kearney*, 444 F. Supp. at 1296 (allowing the Government to maintain one duplicitous count that "can be remedied by election" and dismissing two counts that could not be remedied); *see also Hinton*, 127 F. Supp. 2d at 556 ("no other remedy is available or appropriate" to cure duplicitous indictment other than dismissal or election); *Munoz-Franco*, 986 F. Supp. at 72 (dismissing duplicitous counts); *United States v. Bowline*, 593 F.2d 944, 947–48 (10th Cir. 1979) (affirming district court decision to dismiss duplicitous charge rather than allow the Government to elect which offense to proceed on).

## CONCLUSION

For the foregoing reasons, Mr. Herbert respectfully requests that the Court dismiss Count Five of the Indictment pursuant to Federal Rule of Criminal Procedure 8(a) or, in the alternative, require the Government to elect to prosecute either the Alleged Victim-1 Fraud or the Alleged Victim-2 Fraud, and grant such other and further relief as the Court deems just and proper.

Dated: August 14, 2026

Respectfully submitted,

*/s/ Jordan Estes*
Jordan L. Estes
Dani James
Trevor Bondy Gopnik
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
jestes@gibsondunn.com
djames@gibsondunn.com
tgopnik@gibsondunn.com

*Attorneys for Anthony Herbert*