UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

ANTHONY HERBERT,

Defendant.

Case No. 26 Cr. 4 (VEC)

Oral Argument Requested

**DEFENDANT ANTHONY HERBERT'S MOTION TO SUPPRESS EVIDENCE**

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ..... 1

BACKGROUND ..... 3

I. The Government Executes Two 2024 Warrants Related to Communications Dated January 1, 2023 or Later ..... 5

A. The July 2024 Warrant ..... 5

B. The September 2024 Warrant ..... 6

II. The Government Relies On Communications Outside the Scope of the 2024 Warrants in Applications for Three Additional Warrants ..... 7

A. The August 2025 Warrant ..... 7

B. The Government Secures Two More Warrants Using Pre-2023 Communications ..... 9

1. The October 2025 Warrant ..... 10

2. The February 2026 Warrant ..... 11

LEGAL STANDARD ..... 12

ARGUMENT ..... 14

I. The Government Conducted an Unconstitutional Review of Communications Outside the Scope of the 2024 Warrants ..... 14

A. The 2024 Warrants Did Not Authorize Review of Pre-2023 Communications ..... 14

B. The September 2024 Warrant is Overbroad ..... 16

II. The Pre-2023 Communications Were Not in Plain View ..... 17

III. Wholesale Suppression of Any Pre-2023 Communications, Including Any Plain View Evidence, Is Warranted Because the Government's Flagrant Disregard for the Safeguards Set by the 2024 Warrants Was Not in Good Faith ..... 21

IV. Evidence Derived from the Follow-On Warrants Must Also Be Suppressed as Fruit of the Poisonous Tree ..... 24

A. The August 2025 Warrant ..... 24

B. The October 2025 Warrant ..... 26

C. The February 2026 Warrant ..... 27

V. At the Very Least, an Evidentiary Hearing is Required ..... 28

CONCLUSION ..... 31

# TABLE OF AUTHORITIES

## Cases


*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
403 U.S. 388 (1971)....................12

*Franks v. Delaware*,
438 U.S. 154 (1978)....................3, 13, 28, 30

*Horton v. California*,
496 U.S. 128 (1990)....................13, 18

*Illinois v. Gates*,
462 U.S. 213 (1983)....................25

*Marron v. United States*,
275 U.S. 192 (1927)....................12

*Simon v. City of New York*,
893 F.3d 83 (2d Cir. 2018)....................15

*United States v. Banyan*,
791 F. Supp. 3d 388 (S.D.N.Y. 2025)....................16

*United States v. Canfield*,
212 F.3d 713 (2d Cir. 2000)....................29

*United States v. Debbi*,
244 F. Supp. 2d 235 (S.D.N.Y. 2003)....................22

*United States v. Delima*,
2023 WL 7404054 (D. Vt. Nov. 9, 2023)....................16, 19

*United States v. Dzialak*,
441 F.2d 212 (2d Cir. 1971)....................21

*United States v. Ferguson*,
758 F.2d 843 (2d Cir. 1985)....................29

*United States v. Galpin*,
720 F.3d 436 (2d Cir. 2013)....................13, 16, 17, 18, 19

*United States v. Kaplan*,
2025 WL 2200539 (E.D.N.Y. Aug. 1, 2025)....................20

*United States v. Kow*,
58 F.3d 423 (9th Cir. 1995)....................16

*United States v. Matias*,
836 F.2d 744 (2d Cir. 1988)....................14

*United States v. Nejad*,
436 F. Supp. 3d 707 (S.D.N.Y. 2020)....................15, 16, 29

*United States v. Peeples*,
962 F.3d 677 (2d Cir. 2020)....................24

*United States v. Pinto-Thomaz*,
357 F. Supp. 3d 324 (S.D.N.Y. 2019)....................24

*United States v. Rajaratnam*,
719 F.3d 139 (2d Cir. 2013)....................29

*United States v. Raniere*,
2019 WL 1984026 (E.D.N.Y. May 3, 2019) ....................20

*United States v. Raymonda*,
780 F.3d 105 (2d Cir. 2015)....................22, 24

*United States v. Reichberg*,
5 F.4th 233 (2d Cir. 2021). CS-1 ....................26

*United States v. Reilly*,
76 F.3d 1271 (2d Cir. 1996)....................23

*United States v. Saffarinia*,
424 F. Supp. 3d 46 (D.D.C. 2020)....................18

*United States v. Shi Yan Liu*,
239 F.3d 138 (2d Cir. 2000)....................13, 21

*United States v. Sosunov*,
2018 WL 2095176 (S.D.N.Y. May 7, 2018) ....................17

*United States v. Sun-Diamond Growers of Cal.*,
526 U.S. 398 (1999)....................26

*United States v. Voustianiouk*,
685 F.3d 206 (2d Cir. 2012)....................22

*United States v. Wey*,
256 F. Supp. 3d 355 (S.D.N.Y. 2017)....................13, 14, 22

*United States v. Wiggins*,
298 F.R.D. 75 (E.D.N.Y. 2014) ....................23

*United States v. Williams*,
592 F.3d 511 (4th Cir. 2010) ....................20

*Utah v. Strieff*,
579 U.S. 232 (2016)....................24

## PRELIMINARY STATEMENT

Defendant Anthony Herbert moves to suppress all evidence obtained and derived from the Government's unauthorized review of nearly six years of his private emails and text messages. In 2024, the Government obtained warrants directed at Mr. Herbert's personal email account (the "July 2024 Warrant") and his cellphone (the "September 2024 Warrant") (together, the "2024 Warrants"). Both warrants authorized the Government to review communications from these sources for evidence of an alleged scheme to steer City security contracts for bribes. And for the categories of communications at issue here, both permitted review only of communications between January 1, 2023 and the date each warrant issued. That window was not arbitrary. It marked the period for which the Government had established probable cause—Mr. Herbert became the Citywide Public Housing Liaison in February 2023—and it was what separated these warrants from a general search of nearly six years of Mr. Herbert's messages during the time he was a private citizen. Instead of adhering to this limitation, the Government reviewed communications that were outside the relevant time period, and then relied on the fruits of this warrantless review to obtain additional warrants. These actions violated Mr. Herbert's Fourth Amendment rights.

The Government has conceded that its review exceeded the scope of the 2024 Warrants. Special Agent Manuel Zoquier swore in a later warrant application that the pre-2023 communications he read were in plain view—in other words, they weren't authorized by the warrants. But the plain view doctrine does not justify the Government's actions. These records were undoubtedly reviewed on electronic platforms that allow government agents to restrict the viewable material by date. Indeed, Google was directed to produce [redacted]

[redacted] as a discrete field. Ex. 1[1] at USAO_00000030. With just a few clicks, the Government could have easily restricted its searches to emails and text messages from January 1, 2023 and beyond. Instead, it chose to comb through years of Mr. Herbert's personal communications, dating back to 2017. And worse, the seized communications were not incriminating on their face. They discuss [redacted] The agent could ascribe significance to it only by drawing on his [redacted] and his [redacted] Ex. 3 at USAO_00000135. The plain view doctrine cannot excuse this unlawful review.

The Government then used the fruits of that unlawful review to obtain three more warrants. In August 2025, it secured a warrant expanding its review of the same email and cellphone data back to January 1, 2022, based in large part on these plain view emails (the "August 2025 Warrant"). And in October 2025 and February 2026, the Government obtained two further warrants to investigate new alleged schemes (the "October 2025 and February 2026 Warrants"). The October 2025 application relied on communications dated outside the January 1, 2023 limit—and some outside even the expanded January 1, 2022 limit—that Special Agent Zoquier once more claimed to have seen in plain view. The February 2026 application relied on emails and messages dating back to September 2019, which Special Agent Zoquier admitted he found by reviewing data collected under the earlier warrants. Each of the three later warrants therefore rests on evidence the Government had no lawful right to see.

Because the plain view doctrine did not permit the Government to review the communications collected pursuant to, but outside the scope of, the 2024 Warrants, Mr. Herbert

[1] All references to "Ex. __" refer to exhibits to the Declaration of Jordan Estes, dated August 14, 2026.

seeks three forms of relief. *First*, the Court should suppress, wholesale, the out-of-scope communications, including those the Government claims its agents saw in plain view. *Second*, the Court should suppress evidence from before 2023 derived from the August 2025 Warrant, whose application establishes no probable cause for such evidence without the unlawfully reviewed pre-2023 communications. *Third*, because the October 2025 and February 2026 Warrants all depend on unlawfully derived evidence, the Court should suppress the materials from those warrants as fruits of the poisonous tree. At a minimum, the Court should hold an evidentiary hearing to determine how the agents conducted their review and whether the agents lawfully seized Mr. Herbert's emails and text messages under the plain view doctrine as well as a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), to determine whether the search warrant affidavits contained material misrepresentations or omissions.

## BACKGROUND

This motion concerns five search warrants obtained by the Government between July 2, 2024 and February 18, 2026.[2] For ease of reference, below is a chart listing the various warrants, the device or account searched, the out-of-scope communications relied on, and the relief sought.

[2] The facts in this memorandum are drawn from the Government's warrant applications, supporting affidavits, and returns. Mr. Herbert recites the Government's allegations and characterizations solely for purposes of this motion. He does not concede that any alleged conduct occurred or was wrongful, or that the Government's characterizations of any communication are accurate.

| Ex. # | Warrant | Date | Device/Account Searched | Out of Scope Communications Relied Upon | Relief Sought |
|---|---|---|---|---|---|
| 1 | 24 Mag. 2466 (the July 2024 Warrant) | July 2, 2024 | Google Account [redacted] | N/A | Suppression of out-of-scope materials supposedly in plain view |
| 2 | 24 MC 3402 (the September 2024 Warrant) | Sept. 3, 2024 | Mr. Herbert's cellphone | N/A | Suppression of out-of-scope materials supposedly in plain view |
| 3 | 25 Mag. 2583 (the August 2025 Warrant) | Aug. 14, 2025 | Google Account [redacted] and Mr. Herbert's cellphone | Emails and texts from 2017-2022 that were supposedly in plain view | Suppression of emails and texts obtained pursuant to this warrant before January 1, 2023 and evidence of "Additional Bribery Offenses" |
| 4 | 25 Mag. 3283 (the October 2025 Warrant) | Oct. 15, 2025 | Google Account [redacted] and Mr. Herbert's cellphone | Emails and texts from 2021 through 2022, with plain view claimed for 2021 emails only. | Suppression of all evidence obtained from this warrant |
| 5 | 26 Mag. 471 (the February 2026 Warrant) | February 18, 2026 | Google Account [redacted] and Mr. Herbert's cellphone | Emails and texts from 2019 through 2022, in reliance on prior tainted warrants | Suppression of all evidence obtained from this warrant |

### I. The Government Executes Two 2024 Warrants Related to Communications Dated January 1, 2023 or Later

#### A. The July 2024 Warrant

On July 2, 2024, the Government obtained a warrant to search Mr. Herbert's personal Google account, [redacted] (the "Subject Account"). Ex. 1. The July 2024 Warrant's Subject Offenses—wire fraud, honest services fraud, bribery, theft of government funds, Travel Act and money-laundering offenses, and conspiracies to commit them—all arose from an alleged [redacted] *Id.* at USAO_00000032–33. The July 2024 Warrant directed Google to produce all of Mr. Herbert's emails and certain associated internal records related to Mr. Herbert, without limitation as to subject matter or date. Ex. 1 at USAO_00000030–31. But the July 2024 Warrant contained a particularity requirement: it only permitted the Government to review the disclosed materials for certain enumerated categories of evidence and, critically, only [redacted] *Id.* at USAO_00000032–33. That date was significant, because Mr. Herbert became the Citywide Public Housing Liaison around that time and was "responsible for engaging with residents and leadership of [the New York City Housing Authority] on behalf of City Hall," including on issues related to public housing security. *See* Indictment ¶ 6.

Special Agent Yves Hunziker signed the probable cause affidavit and the July 2024 Warrant issued. The July 2024 Warrant directed Google to produce [redacted] And it specified that reviewing agents could only undertake a [redacted] review of individual communications [redacted] Ex. 1 at USAO_00000034. Google complied with the July 2024 Warrant. Ex. 3 at USAO_00000221–22

[redacted]

### B. The September 2024 Warrant

On September 3, 2024, the Government obtained a warrant to search Mr. Herbert's person and cellphone. Ex. 2. The subject matter of the September 2024 Warrant was substantially similar to that of the July 2024 Warrant. Ex. 2. The September 2024 Warrant was supported by a second probable cause affidavit signed by Special Agent Yves Hunziker.

The September 2024 Warrant permitted the Government to seize fifteen specified categories of items set forth under Attachment B-14 to the warrant. These included:

- [redacted]
- [redacted]

Ex. 2 at USAO_00117637 (emphasis added). The seizure of those communications was limited to [redacted] *Id.*; *see also* Ex. 3 at USAO_00000123 n.7 [redacted] Similarly, seizure of [redacted] was limited to January 1, 2023, to September 3, 2024. Like the July 2024 Warrant, in searching Mr. Herbert's phone, agents were only authorized to undertake a [redacted] review of each individual electronic communication to locate information responsive to the warrant. Ex. 2 at USAO_001176338–9.

For eleven of the subject categories seized, Attachment B-14 carried no date limitation, including for evidence of motive and consciousness of guilt. Ex. 2 at USAO_00117638. Another category—for evidence concerning the occupancy or ownership of Mr. Herbert's home—explicitly permitted seizure of evidence specifically dating back to January 1, 2018. Ex. 2 at USAO_00117637. To review these categories in particular, law enforcement personnel were [redacted] *Id*. at USAO_00117639. But because the only communications [redacted] were those dated on or after January 1, 2023, the January 1, 2018 review window supplied no basis to review any earlier communications. *Id*. at USAO_00117637. Indeed, reviewing law enforcement personnel were instructed to [redacted] *Id*. at USAO_00117640. Accordingly, to review Mr. Herbert's responsive communications, law enforcement personnel were limited to the period January 1, 2023 to September 3, 2024.

## II. The Government Relies On Communications Outside the Scope of the 2024 Warrants in Applications for Three Additional Warrants

### A. The August 2025 Warrant

On August 14, 2025, the Government sought a third warrant. The August 2025 Warrant sought to re-review Mr. Herbert's Google email account and his seized phone but this time, for an "expanded time period" dating back to January 1, 2022 and for new sets of offenses, [redacted] (the "Additional Fraud Subject Offenses") and an alleged bribery scheme [redacted] (the "Additional Bribery Subject Offenses").

Ex. 3 at USAO_00000123 ¶ 13; USAO_00000139 ¶¶ 27–28.[3] The Government sought the August 2025 Warrant to review these additional offenses because, as it acknowledged, it was only authorized to review the emails and other information collected as part of the July 2024 Warrant [redacted] *Id.* at USAO_00000122 ¶ 12(a); *see also id.* at USAO_00000123 ¶ 12(b) & n.7 (acknowledging same date limitation in connection with September 2024 Warrant). Despite these acknowledgements, the August 2025 Warrant's probable cause showing for the Additional Fraud Subject Offenses relied on emails and text messages collected pursuant to the 2024 Warrants that are dated before January 1, 2023, including:

- An April 19, 2017 email concerning the [redacted]. Ex. 3 at USAO_00000133 ¶ 20(a).
- A March 20, 2018 email concerning [redacted] *Id.* ¶ 20(b).
- An April 9, 2019 email captioned [redacted] *Id.* ¶ 20(c).
- A July 21, 2021 email concerning an August 2021 [redacted] *Id.* at USAO_00000134 ¶ 20(d).
- An exchange of messages between August 17, 2021 and December 28, 2022, between Mr. Herbert and [redacted] *Id.* ¶ 20(e).[4]

The sources of all of these pre-January 1, 2023 communications were the 2024 Warrants.[5]

The Government also reviewed—and included in the August 2025 Warrant affidavit—pre-2023 emails concerning purported payments to Mr. Herbert from [redacted]

---

[3] The August 2025 Warrant also sought evidence related to alleged [redacted] offenses from 2023 and onward. Ex. 3 at USAO_00000123 ¶ 13. Mr. Herbert is not challenging probable cause for these alleged offenses.

[4] Paragraph 20 also lists three text messages dated October 22, 2021, February 11, 2022, and November 9, 2022. Ex. 3 at USAO_00000134–35(f)–(h). Footnote 13 of Special Agent Zoquier's affidavit attributes those three messages to [redacted] *Id.* at USAO_00000134 n.13.

[5] The Government does not specify in the August 2025 Warrant whether the source of information for each communication was the July 2024 Warrant or the September 2024 Warrant.

[redacted] Ex. 3 at USAO_00000132 n. 12. Special Agent Zoquier averred that these emails showed Mr. Herbert [redacted] *Id.* at USAO_00000131–32.

The probable cause section for the Additional Bribery Subject Offenses did not rely on communications seized in plain view. But the affidavit identifies no bribe. It recites that [redacted] *Id.* at USAO_00000139. [redacted]. *Id.* at USAO_00000139–40. [redacted] *Id.* at USAO_00000140.

Based on the agent's representations and the out-of-scope evidence gathered from the 2024 Warrants, the August 2025 Warrant issued, authorizing the Government to review communications dating back to January 1, 2022. Ex. 3 at USAO_00000157–58, USAO_00000172.

### B. The Government Secures Two More Warrants Using Pre-2023 Communications

By the fall of 2025, the Government held three items of storage media containing Mr. Herbert's data: (i) a hard drive, onto which the Government loaded Google's production pursuant to the July 2024 Warrant, Ex. 4 (the October 2025 Warrant) at USAO_00000221–22; (ii) the phone seized pursuant to the September 2024 Warrant, *id.* at USAO_00000222; and (iii) a flash drive, onto which the Government had loaded a supplemental production of new post-July 2024 material that Google produced pursuant to the August 2025 Warrant, *id.* at USAO_00000222–23.

**1. The October 2025 Warrant**

On October 15, 2025, the Government obtained a fourth warrant authorizing additional searches from each of the three items of storage media. Ex. 4. The October 2025 Warrant—again supported by an affidavit of Special Agent Zoquier—sought evidence of two more alleged schemes: a scheme to obtain Paycheck Protection Program loans using false documentation in 2021 (the "PPP Loan Scheme"), and a scheme in which, the Government alleges, Mr. Herbert referred the families of deceased crime victims to a funeral home, pressed City officials to approve the funeral home's burial-reimbursement claims, and received kickback payments in return (the "Funeral Referral Scheme"). The application also sought evidence relating to [redacted] Ex. 4 at USAO_00000230 ¶ 15. Once again, the probable cause showing rested in substantial part on communications from before January 2023—including emails and text messages the affidavit describes as seen "in plain view":

- Emails—which [redacted]—reflecting what the affidavit describes as Mr. Herbert's May 7, 2021 deposit of a $20,000 check, which it links to the alleged PPP Loan Scheme. *Id.* at USAO_00000229–30 ¶ 14.

- Nine exchanges of texts and emails, dated September 8 through December 12, 2022 and quoted verbatim, between Mr. Herbert and [redacted], the funeral home's owner, concerning the alleged Funeral Referral Scheme. *Id.* at USAO_00000231–35 ¶ 19(a)–(i).

- Eight exchanges of texts, dated February 1, 2022 through December 15, 2022 and quoted verbatim, between Mr. Herbert and [redacted] *Id.* at USAO_00000239–41 ¶ 30(a)–(h).

Special Agent Zoquier identified the source of the [redacted] communications as the "Prior Search Warrants" and "the Prior Warrants." *Id.* at USAO_00000230 ¶ 16; *id.* at

USAO_00000231 ¶ 19; *id.* at USAO_00000239 ¶ 29. The affidavit defines "Prior Search Warrants" to mean all three earlier warrants. *Id.* at USAO_00000221–22 ¶ 3.

### 2. The February 2026 Warrant

Six weeks following the unsealing of the Indictment, on February 18, 2026, the Government obtained a fifth warrant, again supported by an affidavit of Special Agent Zoquier. Ex. 5 (the February 2026 Warrant). It authorized more searches of the Email Account returns, the Herbert Phone extraction, and the supplemental Google production obtained under the August 2025 Warrant. This warrant sought evidence of yet another alleged scheme: that Mr. Herbert, [redacted] The Indictment charges no offense arising from this alleged scheme.

The February 2026 Warrant's probable cause showing rests in large part on pre-2023 communications, including:

- A September 18, 2019 email from the Business Executive to Mr. Herbert, attaching [redacted] *Id.* at USAO_00113327 ¶ 11.

- A December 2019 email from Mr. Herbert to [redacted] *Id.* at USAO_00113328 ¶ 12.

- A December 2019 exchange in which [redacted]

[redacted] *Id.* at USAO_00113328–29 ¶ 13.

- January 2021 emails in which Mr. Herbert called [redacted] *Id.* at USAO_00113329 ¶ 13.
- November 2022 text messages between Mr. Herbert and [redacted] followed by a phone call between Mr. Herbert and [redacted] on December 8, 2022. *Id.* at USAO_00113331–32 ¶ 18.

Special Agent Zoquier did not assert that he located these communications in plain view. Instead, he described his [redacted] *id.* at USAO_00113333 ¶ 21. The July 2024 Warrant prohibited the Government from reviewing Mr. Herbert's pre-2023 communications, and the August 2025 Warrant, which the Government procured by quoting pre-2023 communications that same prohibition placed off limits, still did not permit the Government to review communications before January 1, 2022.

In sum, the 2024 Warrants confined the Government's evidence-gathering to Mr. Herbert's communications dated on or after January 1, 2023. But the Government's agents reviewed his emails and text messages dating back to at least April 2017 to secure the August 2025 Warrant, October 2025 Warrant, and February 2026 Warrant (together, the "Follow-On Warrants"). Because the Government's review exceeded the 2024 Warrants' particularized scope, the evidence derived from that unlawful review must be suppressed.

## LEGAL STANDARD

The Fourth Amendment "confines an officer executing a search warrant strictly within the bounds set by the warrant." *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 394 n.7 (1971); *Marron v. United States*, 275 U.S. 192, 196 (1927) ("As to what is to be taken, nothing is left to the discretion of the officer executing the warrant."). And "[i]f the

scope of the search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional without more." *Horton v. California*, 496 U.S. 128, 140 (1990). This "particularity requirement" renders "general searches ... impossible and prevents the seizure of one thing under a warrant describing another." *United States v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013).

"Where, as here, the property to be searched" includes electronic communications stored on hard drives and phones, "the particularity requirement assumes even greater importance" because "[t]he potential for privacy violations occasioned by an unbridled, exploratory search of [electronic devices] is enormous." *Id.* at 446–47; *United States v. Wey*, 256 F. Supp. 3d 355, 383 (S.D.N.Y. 2017) (citation modified) (Electronically stored information "can give the government possession of a vast trove of personal information about the person to whom the [information] belongs, much of which may be entirely irrelevant to the criminal investigation that led to the seizure.").

When the government "flagrantly disregard[s]" the terms of a warrant, "wholesale suppression" is required. *United States v. Shi Yan Liu*, 239 F.3d 138, 140 (2d Cir. 2000). "The rationale for blanket suppression is that a search that greatly exceeds the bounds of a warrant and is not conducted in good faith is essentially indistinguishable from a general search." *Id.* at 141. And any evidence acquired as an indirect product of an illegal search, including a search due to an invalid warrant, must be suppressed as the fruit of the poisonous tree. *Franks v. Delaware*, 438

U.S. 154, 156 (1978) (where search warrant is invalid, it "must be voided and the fruits of the search excluded").

## ARGUMENT

### I. The Government Conducted an Unconstitutional Review of Communications Outside the Scope of the 2024 Warrants

#### A. The 2024 Warrants Did Not Authorize Review of Pre-2023 Communications

The 2024 Warrants only permitted the Government to review communications related to the Subject Offenses dated *on or after* January 1, 2023. The Government has acknowledged this fact in sworn affidavits. Ex. 3 at USAO_00000122–23 ¶ 12(a)–(b) & n.7. That temporal requirement was essential to satisfy the Fourth Amendment's particularity requirement because without a meaningful limitation on the review of Mr. Herbert's communications, the warrants would have authorized a forbidden general search. *See Wey*, 256 F. Supp. 3d 355, 387–88 (warrants lacked temporal limitation, and therefore, lacked particularity required by the Fourth Amendment).

The Government did not adhere to these restrictions, repeatedly citing to emails and text messages sent before January 1, 2023 in subsequent warrant applications and justifying that departure from the particularity safeguards of the 2024 Warrants by conclusorily asserting that these communications were "in plain view" (which they weren't). The Court should require that the Government adhere to the limits of the 2024 Warrants and suppress the communications the Government reviewed outside the temporal scope of the 2024 Warrants, together with all evidence derived from that unlawful review.

It is familiar law that "[a] search must be confined to the terms and limitations of the warrant authorizing it." *United States v. Matias*, 836 F.2d 744, 747 (2d Cir. 1988). A "temporal limitation is one … indicia of particularity" that ties the authorized search to the period for which

the government has established probable cause. *See United States v. Nejad*, 436 F. Supp. 3d 707, 729 (S.D.N.Y. 2020) (citation omitted); *Simon v. City of New York*, 893 F.3d 83, 88 (2d Cir. 2018) ("[I]t is self-evident that a seizure conducted pursuant to [a] [] warrant must conform to the terms of that warrant."); *Nejad*, 436 F. Supp. 3d at 733 (the "[s]eizure of items outside the scope of a search warrant is unconstitutional[.]").

Here, the 2024 Warrants authorized the Government to review Mr. Herbert's communications only from January 1, 2023 forward. Ex. 1 at USAO_00000032–33; Ex. 2 at USAO_00117637–38. That date range made sense because Mr. Herbert began serving as Citywide Public Housing Liaison around that time. *See* Indictment ¶ 6. Instead of adhering to the conditions of the 2024 Warrants, the Government reviewed Mr. Herbert's communications from at least 5.5 years out of the court-ordered scope and invoked the plain view doctrine to justify that overreach.

Courts have suppressed evidence in analogous circumstances. In *United States v. Armstrong*, an agent obtained a warrant to search a cellphone for evidence from a four-and-a-half-month window, representing to the issuing judge "that if he inadvertently observed content outside of the date range that appeared to be evidence of criminal activity, he would apply for an additional warrant." 2024 WL 2894273, at *18 (D. Minn. Mar. 12, 2024), *R&R adopted sub nom. United States v. Sam*, 2024 WL 2354593 (D. Minn. May 23, 2024). He did not. Instead, as here, the agent read message threads from years outside the window. Following a suppression hearing, the court concluded that the agent "deliberately chose to check the dates of messages only after reading the full content of the conversations" and then copied the out-of-range messages verbatim into an application for a second, backward-reaching warrant. *Id.* at *18, *29. The court held that "by adopting a personal search strategy that involved finding evidence first and only checking the dates of the messages after," the agent "effectively converted [a] temporally limited search warrant into

a general warrant." *Id.* at *27. And after that hearing the court ordered the suppression of all evidence falling outside the authorized date range. *Id.* at *30 n.22, *32*; see Sam*, 2024 WL 2354593, at *2; *see also United States v. Delima*, 2023 WL 7404054, at *21–22 (D. Vt. Nov. 9, 2023) (execution of cellphone warrant was "unlawful" where agents disregarded warrant's express date limitations).

The same result should apply here. The Government's review of communications "outside the [temporal] scope of" the 2024 Warrants was "unconstitutional." *Nejad*, 436 F. Supp. 3d at 733. By reviewing Mr. Herbert's communications from years outside the temporal scope of the 2024 Warrants and using those communications to secure the Follow-On Warrants, the reviewing agents "effectively converted [the 2024 Warrants]" with clear "temporal[] limit[s] … into a general warrant." *Armstrong*, 2024 WL 2894273, at *27. The Fourth Amendment does not tolerate such unrestrained rummaging.

**B. The September 2024 Warrant is Overbroad**

To the extent the Government contends that the September 2024 Warrant's undated categories authorized its review of pre-2023 communications, the warrant is unconstitutionally overbroad. "A warrant is 'defective if it is broader than can be justified by the probable cause upon which the warrant is based.'" *United States v. Banyan*, 791 F. Supp. 3d 388, 394 (S.D.N.Y. 2025) (quoting *Galpin*, 720 F.3d at 446). "[A] warrant's temporal limitation, or the absence of one, may be a factor in determining overbreadth." *Id.* (citation omitted).

There was no justification for the lack of temporal limitation. Probable cause for the alleged offenses began no earlier than 2023, when Mr. Herbert became the Citywide Public Housing Liaison. Indictment ¶ 6; Ex. 2 at USAO_00117539 ¶ 49(g)(i). Because many of the September 2024 Warrant's subject categories do not "limit the scope of the seizure to a time frame within which the suspected criminal activity took place," *United States v. Kow*, 58 F.3d 423, 427

(9th Cir. 1995), it is impermissibly "broader than can be justified by the probable cause upon which the [September 2024 Warrant] is based," *Galpin*, 720 F.3d at 446.

## II. The Pre-2023 Communications Were Not in Plain View

All but admitting that it had no basis to review Mr. Herbert's pre-2023 communications, Special Agent Zoquier asserted in the affidavits to the August 2025 Warrant and the October 2025 Warrant that the out-of-range communications he reviewed were in plain view. Ex. 3 at USAO_00000132 & n.12; Ex. 4 at USAO_00000229–30 ¶ 14.[6] But the plain view doctrine cannot justify the Government's review of out-of-scope electronic communications that agents could have, and should have, excluded from their review.

The plain view doctrine permits an officer to seize evidence outside a warrant's authorization only if: (1) "the evidence" is "in fact" in "plain view"; (2) "the officers who seize[d] such evidence [did] not violate[] the Fourth Amendment in arriving at the place in which the evidence [was] plainly viewed"; and (3) "the incriminating character of the evidence [was] immediately apparent." *United States v. Sosunov*, 2018 WL 2095176, at *8 (S.D.N.Y. May 7, 2018) (citations omitted). And the Government cannot evade the "heightened sensitivity to the particularity requirement" the Second Circuit demands in "digital searches," where plain view claims otherwise create "a serious risk that every warrant for electronic information will become, in effect, a general warrant, rendering the Fourth Amendment irrelevant." *Galpin*, 720 F.3d at 447 (citation omitted). As such, the plain view doctrine has no application here.

*First*, the pre-2023 electronic communications collected pursuant to the 2024 Warrants were not in "plain view." Evidence is in plain view only if its incriminating character is apparent

---

[6] Special Agent Zoquier did not rely on the plain view doctrine for his affidavit supporting the February 2026 Warrant. However, the February 2026 Warrant should still be suppressed as fruit of the poisonous tree.

on sight, without further search. *Horton*, 496 U.S. at 136–37. That standard is even more exacting for electronic communications, which by their nature must be collected in bulk, processed, and sorted before their contents can be known. A file's "outwardly visible characteristics … may disclose nothing about its content," and "government efforts to locate particular files will require examining a great many other files to exclude the possibility that the sought-after data are concealed there." *Galpin*, 720 F.3d at 447 (citation omitted). The Government thus cannot "obtain[] authorization to search the hard drive" and "claim that the contents of every file it chose to open [was] in plain view and, therefore, admissible" given the risk that "every warrant for electronic information will become, in effect, a general warrant, rendering the Fourth Amendment irrelevant." *Id.*

Here, nothing about the Government's review of the pre-2023 communications gathered from the 2024 Warrants was "plain" to view despite Special Agent Zoquier's averments to the contrary. Instead, the Government searched the entire electronic haystack—the complete contents of the Email Account and a full forensic extraction of the Herbert Phone containing tens of thousands of pages of emails and text messages spanning at least seven years of Mr. Herbert's life—to find evidentiary needles dated before 2023. And then it used those pre-2023 needles to secure the Follow-On Warrants.

The Government's expansive search is especially egregious considering that it could and should have used date-filtering features and [redacted] on the [redacted] on which it planned to review Mr. Herbert's electronic communications. *See* Ex. 5 at USAO_00113339. Date-filtering on modern electronic discovery platforms like Relativity (for emails and messages) and Cellebrite (for cell phone data) is widely available. *United States v. Saffarinia*, 424 F. Supp. 3d 46, 83 (D.D.C. 2020) (government noting

that Relativity searches can be filtered by date); *Armstrong*, 2024 WL 2894273, at *26 n.21 ("Cellebrite has had the ability to filter searches by date since at least 2019."). And—at least with respect to Mr. Herbert's emails—Google specifically produced [redacted] Ex. 1 at USAO_00000030.

Here, however, the probable cause applications supporting the Follow-On Warrants provide no indication that the reviewing agents applied any date filters or took any care to shield themselves from pre-2023 material as required by the 2024 Warrants. *See generally* Ex. 3; Ex. 4; Ex. 5; *see also* Ex. 1 at USAO_00000032–33; Ex. 2 at USAO_00117637–38 (limiting review to communications dated on or after January 1, 2023). Given the "heightened sensitivity to the particularity requirement" in digital searches, *Galpin*, 720 F.3d at 447, Special Agent Zoquier "was not authorized to rummage through every file … without any safeguards in place to ensure that [he] did not inadvertently observe material outside the temporal scope of the [2024 Warrants.]" *Armstrong*, 2024 WL 2894273, at *27.

*Second*, as set forth above, the Government violated the Fourth Amendment when it exceeded the 2024 Warrants' terms by reviewing Mr. Herbert's emails and text messages dated before January 2023. Where the government's search methods target information "outside the scope of the valid portion of the warrant … the plain view exception is not available." *Galpin*, 720 F.3d at 451. Here, the Government reviewed communications dated years before January 2023 and "used these" communications "outside of the temporal scope of the [2024 Warrants] to request … additional search warrant[s]." *Armstrong*, 2024 WL 2894273, at *26 (suppressing evidence). As in *Armstrong*, "[e]xtending the plain view doctrine to the present case would effectively make any temporal restriction on such a data search warrant as in this case meaningless." 2024 WL 2894273, at *27; *Delima*, 2023 WL 7404054, at *22 ("[T]he government has not

satisfied its burden to establish the Firearms Photograph was in plain view" where agents copied an entire phone despite explicit date limits).

*Third*, even if the out-of-scope communications were, in fact, in plain view, the alleged "incriminating character" of those improperly reviewed communications was not "immediately apparent." Although the 2024 Warrants permitted agents to undertake a [redacted] review of electronic files, Ex. 1 at USAO_00000034; Ex. 2 at USAO_00117567, unlike photos and videos, "the criminality of [email and] text messages … found by reading messages outside the temporal scope of [a] warrant, are not immediately apparent." *Armstrong*, 2024 WL 2894273, at *27; *United States v. Williams*, 592 F.3d 511, 521 (4th Cir. 2010) ("immediately apparent" from cursory review of files that photos constituted evidence of a crime); *United States v. Raniere*, 2019 WL 1984026, at *4 (E.D.N.Y. May 3, 2019) (cursory review of out-of-scope files made clear to "a person of reasonable caution" that images "constituted evidence of a crime"). "Taking the time to read a message that is several sentences long, while ignoring whether the date of the message puts it within or outside of the temporal scope of the search warrant's authority in the first place, is [an] additional 'investigative step' which makes the incriminating nature of these messages not immediately apparent. As such, the plain view doctrine does not apply." *Armstrong*, 2024 WL 2894273, at *28; *United States v. Kaplan*, 2025 WL 2200539, at *19 (E.D.N.Y. Aug. 1, 2025) (plain view doctrine applied where "no extra steps" were taken before agent observed subject phone).

Here, the Government read—closely enough to excerpt and quote from verbatim—more than two dozen communications spanning approximately six years---from 2017 through 2022—drawn from an email account and cellphone extraction, over months of review, in service of three successive warrant applications. The time it would take to read and synthesize these

communications—each displaying its date on its face—before they could, for example, [redacted] means that any supposed [redacted] was not [redacted] Ex. 3 at USAO_00000132.

In any case, nothing about these communications was facially incriminating. The communications for which the August 2025 Warrant invoked plain view describe [redacted] Ex. 3 at USAO_00000132–35 ¶ 20(a)–(i). The October 2025 application invoked plain view for emails describing an everyday banking transaction: the deposit of a $20,000 check. Ex. 4 at USAO_00000229–30 ¶ 14. Special Agent Zoquier could describe any of this as evidence of a crime only by invoking his [redacted] and facts learned elsewhere in the investigation. *E.g.*, Ex. 3 at USAO_00000133–34 ¶ 20(b)–(c), (e). Because nothing about these communications is facially incriminating, the plain view doctrine cannot save the Government's unconstitutional review.

### III. Wholesale Suppression of Any Pre-2023 Communications, Including Any Plain View Evidence, Is Warranted Because the Government's Flagrant Disregard for the Safeguards Set by the 2024 Warrants Was Not in Good Faith

The Government's deliberate review of pre-2023 communications outside the parameters of the 2024 Warrants, including any evidence it erroneously claims was in "plain view," requires wholesale suppression of that evidence. When the government "flagrantly disregard[s]" the terms of a warrant, "wholesale suppression" is required, because "a search that greatly exceeds the bounds of a warrant and is not conducted in good faith is essentially indistinguishable from a general search." *Liu*, 239 F.3d at 140–41; *United States v. Dzialak*, 441 F.2d 212, 217 (2d Cir. 1971) (law enforcement officers conducted "general search" where "[o]n the items seized … those

which were not described in the warrant far outnumbered those described"); *United States v. Debbi*, 244 F. Supp. 2d 235, 237–38 (S.D.N.Y. 2003) (finding "every preliminary indication" that blanket suppression was warranted where the government seized "many items that plainly fell outside" the warrant's parameters).

The good faith exception to the Fourth Amendment's exclusionary rule provides that "evidence obtained by officers in objectively reasonable reliance on a warrant subsequently invalidated by a reviewing court is not generally subject to exclusion." *Wey*, 256 F. Supp. 3d at 395 (quoting *United States v. Raymonda*, 780 F.3d 105, 118 (2d Cir. 2015)). This exception is not available where law enforcement acts "reckless[ly] or grossly negligent in seeking or executing a warrant." *Raymonda*, 780 F.3d at 118. "The burden is on the government to demonstrate the objective reasonableness of the officers' good faith reliance." *United States v. Voustianiouk*, 685 F.3d 206, 215 (2d Cir. 2012).

Here, there was nothing objectively reasonable about the Government's deliberate review of pre-2023 communications. The 2024 Warrants unmistakably barred review of Mr. Herbert's communications dated before 2023. Ex. 1 at USAO_00000032–33; Ex. 2 at USAO_00117637–38. Nevertheless, the Government's agents reviewed those communications and used them to secure the Follow-On Warrants without disclosing to the issuing magistrates the nature of the unconstitutional search that led the Government to those communications. *See Wey*, 256 F. Supp. 3d at 395 (good faith exception not available where "issuing magistrate has been knowingly misled"). Disclosing to the magistrate only that "[f]or some of the categories of evidence authorized to be seized from the HERBERT Personal Phone, the time period was limited to January 1, 2023, to September 3, 2024," Ex. 3 at USAO_00000123 n.7, the reviewing agents repeatedly invoked the plain view doctrine, an implicit admission they needed an alternative justification

other than the 2024 Warrants to have reviewed those communications. *See United States v. Reilly*, 76 F.3d 1271, 1280 (2d Cir. 1996) (good faith exception not applicable where officer included facts in warrant affidavit that were "almost calculated to mislead"). No reasonable agent reviewing these communications could have failed to recognize that their dates placed them outside the 2024 Warrants' authorized scope. *See Armstrong*, 2024 WL 2894273, at *29 (declining to apply good faith exception).

The record also belies that the Government's review of the pre-2023 messages was "simple, isolated negligence," *United States v. Wiggins*, 298 F.R.D. 75, 79 (E.D.N.Y. 2014) (citation omitted). Far from reviewing a "single message" outside the limits of the 2024 Warrants, *Armstrong*, 2024 WL 2894273, at *29, the Government's warrant applications cited, quoted, and relied on more than two dozen out-of-range communications spanning 2017 to 2022.[7] "Viewing a single conversation outside of the date range might be a mistake, viewing several is a pattern." *Armstrong*, 2024 WL 2894273, at *29. Indeed, there is no indication that the Government troubled itself to filter out-of-scope communications from its review, even though such filtering is a standard function of forensic-review platforms. *See Armstrong*, 2024 WL 2894273, at *26 n.21. And the Government's invocation of plain view demonstrated familiarity with the doctrine it needed to justify using out-of-range materials to secure the Follow-On Warrants. Ex. 2 (24 MC 3402) at USAO_00117640; Ex. 3 at USAO_00000153 ¶ 47. This was no honest oversight of a date limit. *Cf. United States v. Pinto-Thomaz*, 357 F. Supp. 3d 324, 331–32 (S.D.N.Y. 2019)

---

[7] Even when the Government received the August 2025 Warrant which expanded the date range to January 1, 2022, it continued to cite, review, and quote communications from before even that (improperly) expanded time period. *Compare* Ex. 3 at USAO_00000149 ¶ 44(b), (d) (authorizing review of communications only "for the time period between January 1, 2022, and the present"), *with* Ex. 4 at USAO_00000229–30 ¶ 14 (relying on emails documenting May 2021 events that agents purportedly "saw in plain view"), and Ex. 5 at USAO_00113327–29 ¶¶ 11–13 (quoting and relying on emails, messages, and phone calls dated September 18, 2019 through December 8 2022).

(declining blanket suppression where agent's failure to notice a temporal restriction was inadvertent rather than deliberate).

The Government's review was not objectively reasonable. On the contrary, it was reckless. *Raymonda*, 780 F.3d at 118 (good faith exception not available for reckless execution of a warrant). The Court should suppress all pre-2023 communications unlawfully reviewed outside the parameters of the 2024 Warrants.

## IV. Evidence Derived from the Follow-On Warrants Must Also Be Suppressed as Fruit of the Poisonous Tree

Evidence seized pursuant to the Follow-On Warrants must be suppressed as "fruit of the poisonous tree" because that evidence is derived from the unlawfully reviewed pre-2023 communications. The Fourth Amendment's exclusionary rule "encompasses both the primary evidence obtained as a direct result of an illegal search or seizure and, relevant here, evidence later discovered and found to be derivative of an illegality[.]" *Utah v. Strieff*, 579 U.S. 232, 232 (2016). Where a warrant application rests in part on unlawfully obtained information, "a reviewing court should excise the tainted evidence and determine whether the remaining, untainted evidence would provide a neutral magistrate with probable cause to issue a warrant." *United States v. Peeples*, 962 F.3d 677, 688–89 (2d Cir. 2020). Because the Government procured each Follow-On Warrant with the fruits of the unlawful review, those warrants themselves are fruits of the poisonous tree. The evidence collected as a result should be suppressed.

### A. The August 2025 Warrant

The August 2025 Warrant expanded the time period of the 2024 Warrants by one year from January 1, 2023 to January 1, 2022 to search for evidence of new offenses, including the Additional Fraud Subject Offenses and Additional Bribery Offenses. But in seeking to establish probable cause for the Additional Fraud Subject Offenses, it relied heavily on communications outside the

scope of the 2024 Warrants. Ex. 3 at USAO_00000132. After excising these improperly reviewed communications, the only probable cause remaining to support the Additional Fraud Subject Offenses is comprised of three text messages obtained from [redacted] own cellphone—a point Mr. Herbert would probe at an evidentiary hearing—specifically, a request that [redacted] contribute $2,000 to Mr. Herbert's campaign, [redacted] remark that [redacted] and an invitation to a [redacted] about Mr. Herbert's potential candidacy for public office. *Id.* at USAO_00000134–35 ¶ 20(f)–(h) & n.13. No neutral magistrate could find probable cause that Mr. Herbert used [redacted] to commit fraud based on that scant assortment of routine political and business messages, even if they were derived from [redacted] phone. And because there was not probable cause to support the Additional Bribery Offenses, those allegations likewise do not justify the search of emails from 2022.

Nor do the allegations on the Additional Bribery Subject Offenses justify searching emails from 2022. Although these allegations do not rest on improperly-seized communications, they lack the fundamental warrant requirement: probable cause. Probable cause turns on the totality of the circumstances, including an informant's "veracity," "reliability," and "basis of knowledge," and the extent to which the informant's statements are independently corroborated. *Illinois v. Gates*, 462 U.S. 213, 230 (1983). Here, [redacted] statements to law enforcement that Mr. Herbert [redacted] was unreliable and lacked a "basis of knowledge." Ex. 3 at USAO_00000140 ¶ 28(b). [redacted] own records undermine the reliability of these statements because they indicate that [redacted] *Id.* at USAO_00000140 ¶ 28(d) & n.16. And [redacted] clearly lacked a "basis of knowledge" because they admitted that they did not

[redacted] *Id.* at USAO_00000140 ¶ 28(e).

Even crediting [redacted] statements, the payments [redacted] describes are not bribes. Bribery requires a quid pro quo—"a specific intent to give or receive something of value in exchange for an official act." *United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398, 404–05 (1999). The payor and the official must have "understood that [the official] was expected as a result of the payment to exercise particular kinds of influence … as specific opportunities arise." *United States v. Reichberg*, 5 F.4th 233, 247 (2d Cir. 2021). [redacted] recalled only [redacted] made to Mr. Herbert around the time of the Additional Bribery Offenses with a generalized [redacted] that [redacted] Ex. 3 at USAO_00000140 ¶ 28(e). That statement describes an open-ended expectation of general assistance, not a specific quid pro quo. The affidavit therefore supplies no probable cause for the Additional Bribery Subject Offenses. The Court should suppress any evidence purportedly related to such a scheme.

### B. The October 2025 Warrant

The October 2025 Warrant is tainted twice over. First, in seeking this warrant the Government relied on yet more out-of-scope communications. To establish probable cause for the alleged PPP Loan Scheme, the affidavit relied on emails—which [redacted]—reflecting [redacted]. Ex. 4 at USAO_00000229–30 ¶ 14. These May 2021 emails were not only out of scope of the 2024 Warrants, which permitted review of communications dated on or after January 1, 2023; they predate even the expanded January 1, 2022 period of the improperly obtained August 2025 Warrant.

Second, the October 2025 Warrant quotes seventeen exchanges of emails and text messages from 2022: nine between Mr. Herbert and [redacted] concerning the alleged Funeral Referral Scheme, dated September 8 through December 12, 2022, and eight between Mr. Herbert and [redacted], dated February 1 through December 15, 2022. Ex. 4 at USAO_00000231–34 ¶ 19(a)–(i); *id.* at USAO_00000239–41 ¶ 30(a)–(h). The Government had no lawful basis to review those communications. The affidavit identifies their source only as the [redacted] defined to include all three earlier warrants. *Id.* at USAO_00000221–22 ¶ 3; *id.* at USAO_00000230 ¶ 16; *id.* at USAO_00000239 ¶ 29. If the communications were gathered pursuant to the 2024 Warrants, they are plainly out of scope—each message predates January 1, 2023. And if they were gathered pursuant to the August 2025 Warrant, they fall within that warrant's expanded date range, but they are fruit of the poisonous tree. Either way, the seventeen exchanges came from review exceeding the 2024 Warrants' temporal limits, from the tainted August 2025 Warrant, or both, and the October 2025 Warrant secured with them must be suppressed.

**C. The February 2026 Warrant**

The February 2026 Warrant fails for the same reason. Its probable cause showing rests on emails dated September 2019 through January 2021. Ex. 5 at USAO_00113327–29 ¶¶ 11–13. Special Agent Zoquier described his [redacted] *id.* at USAO_00113333 ¶ 21, and swore that [redacted]—that is, the Email Account returns, the Herbert Phone extraction, and the August 2025 Warrant's supplemental production—including [redacted] *Id.* ¶ 22. But the July 2024 Warrant did not permit review of 2019–2021 emails at

all, Ex. 1 at USAO_00000032–33, and the August 2025 Warrant is itself the product of the unlawful review described above. Nor could the August 2025 Warrant have supplied lawful authority for those emails in any event: its categories reaching Mr. Herbert's communications run only from January 1, 2022 forward. Ex. 3 at USAO_00000149–52 ¶ 44(b), (d), (g)–(h), (j). The 2019–2021 emails thus fell outside the communications categories of every warrant the Government has ever held. And there is no attenuation: each warrant flowed from the last, sworn by the same affiant, exploiting the same review.

## V. At the Very Least, an Evidentiary Hearing is Required

At a minimum, the Court should hold an evidentiary hearing on the Government's claim that its agents viewed Mr. Herbert's pre-2023 communications in plain view. The probable cause affidavits to the Follow-On Warrants conclusorily invoke the plain view doctrine six times. But they do not explain how each out-of-scope communication came into the agents' "plain view," whether there were out-of-scope communications not in plain view, or whether agents followed any review protocol, applied date filters, or checked communication dates before reading. Nor do the affidavits to the Follow-On Warrants explain how the incriminating character of these routine communications was readily apparent. Mr. Herbert should be able to cross-examine Special Agent Zoquier and question him about his review of the out-of-scope communications. *See Armstrong*, 2024 WL 2894273, at *29 (holding evidentiary hearing on plain view).[8]

The Court should also hold a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). A defendant is entitled to a *Franks* hearing upon a "substantial preliminary showing" that (1) the

[8] Mr. Herbert requested "[a]ll law enforcement reports or other memoranda reflecting how reviews of the Search Warrants were conducted, all document review protocols for the Search Warrants, and in particular, all facts establishing the review of plain view communications referenced in 25 Mag. 2583, ¶ 20 and Footnote 12, and 25 Mag. 3283, ¶¶ 14, 34-35." Ex. 6 at 3. The Government refused to provide this information. Ex. 7 at 4.

affidavit contained intentional or reckless misrepresentations or omissions—"deliberate falsehood or reckless disregard for the truth"—and (2) the misstatements were material—"necessary to the issuing judge's probable cause finding." *Nejad*, 436 F. Supp. 3d at 718–19 (quoting *United States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013)). Material omissions "are governed by the same rules." *United States v. Ferguson*, 758 F.2d 843, 848 (2d Cir. 1985).

Mr. Herbert has made that showing. Each Follow-On Warrant application misrepresented or omitted how the Government came to possess communications at the heart of its probable cause. Special Agent Zoquier twice described the out-of-range communications as being in plain view in the August 2025 Warrant affidavit, and the October 2025 Warrant application repeated that assertion four more times. Ex. 3 at USAO_00000132 & n.12; Ex. 4 at USAO_00000229–30 ¶ 14; *id*. at USAO_00000244–45 ¶¶ 34–35. That assertion was inaccurate: the communications were not in plain view. The Government found them by searching data the 2024 Warrants placed off limits. The February 2026 Warrant application dropped the plain view claim and instead described the agents' [redacted]—omitting that the July 2024 Warrant never permitted review of pre-2023 emails and that the August 2025 Warrant was itself secured using pre-2023 communications. Ex. 5 at USAO_00113333 ¶ 21; Ex. 1 at USAO_00000032–33.

These misrepresentations and omissions were material. To measure materiality, the Court "disregard[s] the allegedly false statements," supplies the omitted facts, and asks whether "there remains a residue of independent and lawful information sufficient to support probable cause." *United States v. Canfield*, 212 F.3d 713, 718 (2d Cir. 2000) (citation omitted). The August 2025 Warrant's justification for reaching back before 2023—[redacted]—was shown entirely through the 2017–2022

communications in paragraph 20 and footnote 12. Ex. 3 at USAO_00000132 & n.12. The October 2025 Warrant connects Mr. Herbert to the alleged PPP-Loan Scheme through 2021 emails reflecting the May 7, 2021 deposit of a $20,000 check, and builds the alleged Funeral-Referral Scheme and [redacted] on texts and emails from 2022. Ex. 4 at USAO_00000229–30 ¶ 14; *id*. at USAO_00000231–34 ¶ 19(a)–(i); *id*. at USAO_00000239–41 ¶ 30(a)–(h). And the February 2026 Warrant's alleged [redacted] rests almost fully on emails, text messages, and phone calls from 2019 to 2022. Ex. 5 at USAO_00113327–29 ¶¶ 11–13; *id*. at USAO_00113331–32 ¶ 18. Excise those communications, and no residue of probable cause supports any of the Follow-On Warrants.

## CONCLUSION

For the foregoing reasons, the Court should suppress: (1) all evidence obtained or derived from the Government's review of Mr. Herbert's communications dated before January 1, 2023, including any evidence the Government claims was in plain view; (2) all pre-2023 evidence derived from the August 2025 Warrant, whose application lacked probable cause without those communications; and (3) all evidence derived from the October 2025 Warrant and the February 2026 Warrant as fruits of the poisonous tree. In the alternative, the Court should hold an evidentiary hearing on whether the communications reviewed by Special Agent Zoquier were in plain view and a *Franks* hearing.

Dated: August 14, 2026

Respectfully submitted,

*/s/ Jordan Estes*
Jordan L. Estes
Dani James
Trevor Bondy Gopnik
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
jestes@gibsondunn.com
djames@gibsondunn.com
tgopnik@gibsondunn.com

*Attorneys for Anthony Herbert*